1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALVIN BERNARD JONES,                      Case No.  1:18-cv-00493-JDP

12                    Petitioner,              ORDER DENYING PETITION FOR WRIT
                                               OF HABEAS CORPUS
13        v.
                                               ECF No. 1
14   J. GASTELO,

15                    Respondent.

16

17          Petitioner Alvin Bernard Jones, a state prisoner without counsel, seeks a writ of habeas

18   corpus under 28 U.S.C. § 2254.  Petitioner raises four habeas claims: (1) the trial court erred in

19   denying his request for a second competency hearing; (2) the trial court erred in admitting the

20   evidence of prior acts of domestic violence; (3) the jury instructions concerning the evidence of

21   prior acts of violence were prejudicially erroneous; and (4) the court erred in denying his motion

22   for a new trial based on the prosecutor's purported conflict of interest.  ECF No. 1 at 5-10.  The

23   parties have consented to the jurisdiction of a magistrate judge.  ECF No. 6; ECF No. 13.  We

24   will deny the petition for the reasons discussed below.

25   **I.      Background**

26          Petitioner is incarcerated pursuant to the judgment of the Stanislaus County Superior

27   Court, Case No. 1473026.  A jury convicted petitioner of vehicle theft, battery on a cohabitant,

28   making a criminal threat, false imprisonment, and possession of methamphetamine.  The trial

court sentenced petitioner to an aggregate term of thirteen years, eight months in prison.

We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal, Fifth District ("Court of Appeal"). A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> Defendant's charges were based on events occurring in April 2014. Pursuant to Evidence Code section 1109, evidence of prior acts of domestic violence were introduced. We will describe the prior acts before proceeding to the events of April 2014.

> *Prior Domestic Violence Involving Gloria Robinson*

> Gloria Robinson was dating defendant as of July 8, 1998. That day, Robinson returned home from the store with her 11-year-old nephew, eight-year-old niece, and 13-year-old daughter. She was surprised to see defendant "down the street" four or five houses away because she was not aware he had been "released." Robinson told defendant he could not be at her house, and then turned around to walk away. Defendant pulled Robinson's hair and "swung [her] around." Robinson tried to run, but defendant struck her on the left side of her face. Robinson felt a burning sensation and fell into the street. Defendant began stomping Robinson's head and she became unconscious. She awoke in a hospital, where she stayed for about a month. She had at least 50 sutures, a broken jaw, and her mouth was wired shut. Robinson had to subsist on a liquid diet for six weeks and has a permanent scar.

> *Prior Domestic Violence Involving Laura Hoffman*

> Laura Hoffman dated defendant for about a month in "2011 to 2012." On January 28, 2012, they went on a date at a tavern in Modesto. Hoffman had about three beers and defendant had a rum and Coke. They went back to Hoffman's apartment. The two had a discussion about defendant not staying at Hoffman's apartment as often. The two had consensual intercourse.

> Defendant then attempted to initiate anal intercourse, but Hoffman refused. Hoffman was pushing on defendant, believing it was playful. However, defendant said, "'No, you're going to take it.'" Hoffman continued to push him, and defendant "smacked" her in the face with his hand. The force was strong enough to "stun" Hoffman. Defendant "slapped" Hoffman in the face again, and she tried to reach for his eye sockets because "he was not going to stop." Hoffman "believe[s]" defendant hit her again. Hoffman squeezed defendant's scrotum. At some point, defendant bit her, though Hoffman did not remember whether that was before or after

2

she squeezed him.  As she squeezed defendant, he bit her harder and she let go.  Hoffman slid to the floor and crawled away while defendant was hitting her with his fist on her back and ribs.  When she stopped crawling, defendant hit her in the back of her head "[m]any, many times" with his fist.  Defendant also punched her in the face with a closed fist.

Defendant told Hoffman he should just finish her off, and that he was not going back to prison.  Hoffman mentioned her daughter by name, "[t]hinking maybe that would humanize me."

Hoffman asked for a cigarette, thinking it would allow her to get on her feet.  Hoffman tried to go outside to smoke, but defendant cut in front of her and said, "'No, you smoke in here.'" Defendant grabbed a large knife, held it "towards" her and said, "'I should just cut you.  I should just end you.'"  Hoffman said, "'Just do it.  I don't even care anymore.'"

Hoffman was able to get to her cell phone and dial 911.  She whispered her address to the operator.  Defendant became suspicious and came closer to Hoffman.  Hoffman concealed the phone and said things like, "'I can't believe you hit me.  You choked me.'"  Defendant found the phone and threw it against the wall.  Defendant then resumed "beating" Hoffman.

The police knocked on the door.  Defendant was on top of Hoffman on the floor and had his hand around her throat. Defendant told Hoffman to" '[s]hut up' "and" 'be quiet' "and threatened to kill her.  Eventually, the police left.

Hoffman fell asleep.  When she awoke, she said she needed to go to the hospital.  Defendant wanted to accompany her. Hoffman drove defendant to his sister's house and then drove to the emergency room.

Defendant was charged and tried in connection with this incident.  A jury acquitted defendant of the charges.

*Current Offense Involving Deana Thompson*

Defendant had been living with Deana Thompson since December 2013.  Thompson considered the two to have been in a dating relationship since January 2014.  Sometime between January and April 2014, Thompson was evicted and the two began living in a motel.  On April 18, 2014, defendant used the only set of car keys to leave the motel in Thompson's 2001 Chevy Impala.  He later returned.  While defendant and Thompson were in the motel room, defendant locked the door from the inside.  Thompson asked defendant for the car keys so she could go to "the Mission" with her "boys" so they could have two meals and a roof over their heads. Defendant said he knew Thompson had had someone in the room. Thompson felt defendant was accusing her of something.  The look in defendant's eyes was "very intimidating."  Thompson was scared and thought she was going to die.

3

Defendant had a fork and shook it while he spoke to Thompson. Then defendant hit Thompson, causing her to bleed. Thompson tried to leave the room, but defendant tackled her onto the bed. Thompson begged defendant to let her out of the room. She said that if he let her go, she would say someone tried to rape her, but defendant helped her. Thompson made the offer so that defendant would let her out. Defendant refused.

After two or three more hours, at around 9:00 p.m., Thompson heard a knock at the door. Thompson could see it was her brother knocking. Defendant opened the door, and Thompson yelled for her brother not to leave. Defendant told Thompson's brother the "cops" were coming and he should leave. Thompson's brother began to leave, but Thompson said, "'Please don't go, please don't leave me.'" Thompson ran through the door and down the hallway yelling for someone to help her. She ran into the office where the front desk was and asked the employee to lock the door. The employee locked the door and they waited for the police.

Officer Austin Wilson pulled into the parking lot and saw Thompson running toward him screaming that she "had been beat up." Thompson had a laceration on her nose, a bloody nose, and blackening eyes. Wilson requested backup and an ambulance to respond to the scene. Thompson told Wilson that defendant had kept her in the motel room for three hours against her will, threatened to kill her, and had used a plastic fork. Thompson said defendant had left in her vehicle. Several officers went to the motel room, but no suspects were there.

On April 22, 2014, at around 1:20 a.m., California Highway Patrol Officer Phillip DePrater was driving behind a silver Chevy Impala. DePrater decided to run the vehicle's plates, which he does "randomly" to "check for stolen vehicles." The vehicle came back as stolen, so DePrater initiated an enforcement stop. DePrater told defendant to put his hands up and to exit the vehicle. Defendant yelled, "'Don't tell me that this car's stolen.'" DePrater's partner arrested defendant. DePrater searched defendant at the jail and found a white crystal substance in a plastic bag in his pocket.

Officer DePrater called "the registered owner" who told him defendant had assaulted her and had taken her vehicle without permission.

*Defense Case*

The defense investigator, John Hodson, testified that he called Thompson before trial. She told him that "she knew in the police reports . . . there was mention of a fork, but she honestly couldn't remember anything about a fork." Thompson also told Hodson that defendant had consent to drive her vehicle. Hodson also testified that it is important to try to find weapons used in a crime.

4

On cross-examination, Hodson said he knew Thompson was hiding out of state.

The parties stipulated that "'[b]efore [defendant] was arrested on April 22, 2014, [defendant] attempted to contact Deana Thompson via a cell phone call. Ms. Thompson refused to answer the call.'"

ECF No. 17-10 at 5-9 (footnotes omitted).

## II.    Discussion

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See* § 2254; *Harrington v. Richter*, 562 U.S. 86, 97 (2011); *Woodford v. Garceau*, 538 U.S. 202, 206-08 (2003). In a § 2254 proceeding, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The standard that governs the federal court's habeas review depends on whether the state court decided petitioner's claims on the merits.

When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of § 2254(d). Section 2254(d) precludes a federal court from granting habeas relief unless a state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts. *See* § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). A state court's decision is contrary to clearly established federal law if it reaches a conclusion "opposite to" a holding of the United States Supreme Court or a conclusion that differs from the Supreme Court's precedent on "materially indistinguishable facts." *Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014) (citation omitted). The state court's decision unreasonably applies clearly established federal law when the decision has "no reasonable basis." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable determination of facts occurs when a federal court is "convinced that an appellate panel, applying

5

the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016). A federal habeas court has an obligation to consider arguments or theories that "could have supported a state court's decision." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (quoting *Richter*, 562 U.S. at 102). One rule applies to all state prisoners' petitions decided on the merits: the petitioner must show that the state court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even when a state court does not explicitly address a petitioner's claims on the merits, a § 2254 petitioner still must satisfy a demanding standard to obtain habeas relief. When a state court gives no reason for denying a petitioner's habeas claim, a rebuttable presumption arises that the state court adjudicated the claim on the merits under § 2254(d). *See Richter*, 562 U.S. at 99. And a federal habeas court's obligation to consider arguments or theories that could support a state court's decision extends to state-court decisions that offer no reasoning at all. *See Sexton*, 138 S. Ct. at 2557.

If a state court denies a petitioner's habeas claim solely on a procedural ground, then § 2254(d)'s deferential standard does not apply. *See Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016). However, if the state court's decision relies on a state procedural rule that is "firmly established and regularly followed," the petitioner has procedurally defaulted on his claim and cannot pursue habeas relief in federal court unless he shows that the federal court should excuse his procedural default. *See Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016); *accord Runningeagle v. Ryan*, 825 F.3d 970, 978-79 (9th Cir. 2016). If the petitioner has not pursued his habeas claim in state court at all, the claim is subject to dismissal for failure to exhaust state-court remedies. *See Murray v. Schriro*, 882 F.3d 778, 807 (9th Cir. 2018).

If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has explained, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises

of federal judicial authority." *Id.* at 103 (citation omitted). The federal court's habeas review serves as a "guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (emphasis added).

Here, petitioner raises four claims for habeas relief:

> (1) the trial court erred in denying his request for a second competency hearing;
> (2) the trial court erred in admitting the evidence of prior acts of domestic violence;
> (3) the jury instructions concerning the evidence of prior acts of violence were prejudicially erroneous; and
> (4) the court erred in denying his motion for a new trial based on the prosecutor's purported conflict of interest.

ECF No. 1 at 5-10. California state courts addressed the first three claims on the merits on direct appeal. *See* ECF No. 17-10 at 9-18. The Court of Appeal denied the fourth claim on procedural grounds.[1] *Id.* at 18-22. We will address petitioner's claims in turn.

**A. Denial of Request for Second Competency Hearing**

Petitioner argues that the trial court's denial of his attorney's motion for a second competency hearing and the Court of Appeal's affirmation of this denial violated his Fourteenth Amendment right to due process. ECF No. 1 at 25. We find this argument unpersuasive because the state courts' decisions were not based on an unreasonable factual determination.

**i. Procedural Background**

The Court of Appeal summarized the relevant trial-court proceedings as follows:

> On July 7, 2014, defense counsel conveyed that he and his investigator doubted whether defendant could assist the defense at trial due to his mental state. Defense counsel's doubts were based on discussions he had with defendant. Defense counsel said, "We have been on the borderline. I have had difficulty communicating with him . . . ." The court concluded that, based on counsel's statements and the court's own observations, there was a doubt as to whether defendant had the ability to understand the nature and object of the proceedings against him and whether he was capable of assisting counsel. As a result, the court suspended criminal

---

[1] In its order denying petitioner's motion for rehearing of his appeal, the Court of Appeal stated, "Even if defendant had not forfeited the issue, we would likely reject his contention on the merits." ECF No. 17-12 at 1.

proceedings, referred the matter to Dr. Philip Trompetter, and set a hearing for July 31, 2014.

 Dr. Trompetter interviewed defendant face-to-face on July 23, 2014. Defendant reported depression and occasional auditory hallucinations, but there was no evidence of "loose associations, thought blocking, racing thoughts, flight of ideas or any form of thought disorganization." Dr. Trompetter concluded despite the episodic auditory hallucinations, defendant did "not present with evidence of a severe mental disorder that is substantially disabling." Dr. Trompetter observed defendant was aware of the charges against him, understood the seriousness of the charges, knew he could be sentenced to a lengthy prison term, accurately described the role of prosecuting and defense attorneys, knew the purpose and nature of a trial, demonstrated knowledge of *Marsden* and *Faretta* motions and constitutional rights, and accurately described a plea bargain. Defendant argued the evidence against him was rebuttable, but he acknowledged there was a risk he could be convicted. Defendant believed he was not being represented well in court. Dr. Trompetter concluded, "[a]fter a lengthy discussion" that defendant "displays no evidence that a severe mental disorder is reducing his capacity to make rational decisions regarding his own defense."

 At the July 31, 2014, hearing, the defense (and prosecution) submitted on Dr. Trompetter's report. The court found that defendant was currently capable of understanding the nature and object of the proceedings against him and that he is capable of assisting counsel in his defense. The court reinstated criminal proceedings.

 In early August, defense counsel stated in a filing, "I have a belief that the defendant is unable to assist counsel." At a hearing on August 12, 2014, defense counsel claimed defendant "was making statements worse than he had ever made before." Defense counsel also said that his investigator believed defendant's condition had deteriorated. Defense counsel also had defendant speak with another attorney, who was "very emphatic that [defendant] was unable to assist Counsel."

 The court said that Dr. Trompetter had concluded defendant was able to assist counsel. The court concluded that defense counsel had not articulated a "significant change in circumstances which would require the Court to, again, suspend criminal proceedings and vacate our jury trial date."

ECF No. 10 at 8-10.

 On direct appeal, the Court of Appeal rejected petitioner's claim that the trial court erred in this decision. After noting that petitioner's motion lacked evidence demonstrating that

petitioner "no longer understood the nature and seriousness of the charges against him, or showed signs that he could no longer relate his version of events," the court concluded that "there were no sufficient grounds for doubting Dr. Trompetter's prior conclusions." *Id.* at 12.

### ii. Legal Standard

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. *Medina v. California*, 505 U.S. 437, 439 (1992); *Drope v. Missouri*, 420 U.S. 162, 171-73 (1975). A defendant is incompetent if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171. If the evidence raises a "bona fide doubt" about the defendant's competence, due process requires the trial court to hold a full competency hearing. *Pate v. Robinson*, 383 U.S. 375, 385 (1966). The applicable test for competency is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960). The burden of establishing mental incompetence rests with the petitioner. *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985). A state court's determination that a defendant is competent to stand trial is a factual determination that must be given deference when reviewed in federal court on a petition for habeas corpus. *See* 28 U.S.C. § 2254(d)(2); *Williams v. Taylor*, 529 U.S. 362, 386 (2000). Therefore, a federal court may overturn a state-court competency finding only if, "after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); *accord Sully v. Ayers*, 725 F.3d 1057, 1070 (9th Cir. 2013).

### iii. Analysis

Petitioner has not presented evidence that the state courts' competency determination was an unreasonable finding of fact. At trial, the only evidence proffered by defense counsel that a second competency hearing was warranted was (1) counsel's personal belief that petitioner's

condition had deteriorated since the first competency hearing and (2) the opinion of another defense attorney who spoke with petitioner. ECF No. 17-10 at 10. On appeal, petitioner does not point to further evidence; instead, he merely insists that the trial court and the Court of Appeal erred because "defendant's competency can change within a short period of time," ECF No. 1 at 26 (quoting *Maxwell v. Roe*, 606 F.3d 561, 575), and "[d]efense counsel was in 'the best position' to evaluate appellant's competency and ability to render assistance which warranted serious consideration," *id.* (quoting *Torres v. Prunty*, 223 F.3d 1103, 1103 (9th Cir. 2000)). These assertions do not demonstrate that the finding of fact was unreasonable.

To the contrary, the evidence before the trial court was sufficient to support its finding that petitioner was competent to stand trial. The only expert to examine petitioner, Dr. Trompetter, concluded that "despite the episodic auditory hallucinations, defendant did 'not present with evidence of a severe mental disorder that is substantially disabling.'" ECF No. 17-10 at 10. Indeed, the expert opined that

> defendant was aware of the charges against him, understood the seriousness of the charges, knew he could be sentenced to a lengthy prison term, accurately described the role of prosecuting and defense attorneys, knew the purpose and nature of a trial, demonstrated knowledge of *Marsden* and *Faretta* motions and constitutional rights, and accurately described a plea bargain.

*Id.* Based on the foregoing and despite lay opinions to the contrary, the trial court reasonably concluded that petitioner was competent to stand trial. Accordingly, the state courts' rejection of petitioner's competency claim was not an unreasonable determination of facts. Habeas relief is not warranted on petitioner's first claim.

**B. The Admission of Evidence of Prior Acts of Domestic Violence**

Petitioner argues that the trial court's "prejudicial abuse of discretion in admission of prior domestic violence offenses violated appellant's Fifth Amendment double jeopardy protection and Fourteenth Amendment Due Process right to a fundamentally fair trial." ECF No. 1 at 31. We find this argument unpersuasive because the Court of Appeal's decision to allow evidence of prior acts of domestic abuse was neither contrary to clearly established federal law nor a result of an unreasonable application of such law.

1          ### i. Procedural Background

2          The Court of Appeal summarized the relevant trial-court proceedings as follows:

3                  The prosecution moved in limine to admit evidence of
4          defendant's prior instances of alleged domestic violence with
           respect to Robinson and Hoffman. The defense filed its own
5          motion in limine seeking to exclude evidence of the alleged prior
           incidents involving Robinson and Hoffman. The court held a
6          hearing under Evidence Code section 402, during which Robinson
           and Hoffman testified. Robinson and Hoffman's testimony at the
7          hearing largely tracked what they would later say at trial.
                  At the conclusion of the hearing, the defense emphasized
8          that the 1998 incident involving Robinson was more than 10 years
           old, and the prosecution of the incident involving Hoffman resulted
9          in an acquittal.
                  The prosecutor [proffered] that defendant had been
10         sentenced to 13 years in prison for the 1998 incident, was paroled in
           2009, violated his parole and was re-released in 2011. The court
11         determined that the "remoteness factor" was mitigated by the fact
           that defendant had been in custody for at least 10 years between the
12         1998 incident and the current offense. The court also noted that the
           various incidents had similarities, including short-term
13         relationships, hits to the head, and a quick escalation of violence.
           Moreover, Hoffman said she was unable to leave her residence,
14         which is similar to the current offense. The court concluded that
           the evidence of the prior incidents was admissible under section
15         1109. However, the court said it was "prepared to sanitize" the
           evidence concerning the sexual nature of the Hoffman incident.
16
17
18         ECF No. 17-10 at 12-13 (footnotes omitted).

19         On direct appeal, the Court of Appeal held that the trial court did not err in admitting the

20         evidence to prove propensity. ECF No. 17-10 at 13 (citing California Evidence Code section

21         1109 which "permits the admission of defendant's other acts of domestic violence for the purpose

22         of showing a propensity to commit such crimes" (internal quotation marks omitted)). The appeals

23         court noted that the state evidentiary rule did not "permit admission of evidence of acts occurring

24         more than 10 years before the charged offense 'unless the court determines that the admission of

25         this evidence is in the interest of justice.'" *Id.* at 13. In this case, the court held that the

26         admission fell within the interest-of-justice exception because of the similarities of the incidents

27

28

and the remoteness of the 1998 incident was offset by petitioner's incarceration for most of the intervening time period. *Id.* at 14-15.

### ii. Legal Standard

#### a. Due Process

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Supreme Court precedent under § 2254(d)); *see Zapien v. Martel*, 805 F.3d 862, 869 (9th Cir. 2015) (concluding that because there is no Supreme Court case establishing the fundamental unfairness of admitting multiple hearsay testimony, *Holley* bars any such claim on federal habeas review).

The United States Supreme Court has likewise left open the question of whether admission of propensity evidence violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006); *accord Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (concluding that because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law); *see also Davis v. Frink*, No. 16-cv-1159, 2018 WL 2047358, at *7 (E.D. Cal. May 2, 2018), *recommendation adopted in Davis v. Frink*, No. 16-cv-1159 (E.D. Cal. July 11, 2018) (same).

### b. Double Jeopardy

The double jeopardy clause of the Fifth Amendment incorporates the doctrine of collateral estoppel. *Ashe v. Swenson,* 397 U.S. 436 (1970). Collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443. However, the doctrine does not preclude the admission of relevant and probative evidence at a subsequent proceeding simply because it relates to alleged criminal conduct for which a defendant has been acquitted. *Dowling v. United States*, 493 U.S. 342, 348 (1990). The double jeopardy clause protects against multiple prosecutions for the same offense, but "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *United States v. Felix,* 503 U.S. 378, 387 (1992).

### iii. Analysis

With regard to the due process claim, petitioner does not identify a rule of clearly established federal law that has been violated. As explained above, the Supreme Court has not held that admission of either overtly prejudicial evidence or propensity evidence violates due process, so relief may not be granted on this basis.

The same analysis holds for the double jeopardy claim. There is no clearly established law precluding admission of relevant and probative evidence at a subsequent proceeding simply because it relates to alleged criminal conduct for which a defendant has been acquitted. To the contrary, the United States Supreme Court has expressly authorized the introduction of such evidence. *Dowling*, 493 U.S. at 349. Petitioner's contention that the propensity evidence deprived him of the presumption of innocence fails under *Dowling* as well. The jurors were informed that the prior crimes did not result in conviction. *See* ECF No. 10 at 14 n.13.

In sum, the state courts' decisions to allow evidence of prior acts of domestic abuse was neither contrary to clearly established federal law nor a result of an unreasonable application of such law.

## C. Jury Instructions Concerning the Evidence of Prior Acts of Violence

Petitioner argues that the trial court's use of "CALCRIM No. 852 instructions . . . violated his Sixth Amendment right to trial by jury and the Fourteenth Amendment Due Process Clause as permissive inferences of propensity which relieved the prosecution's burden of proof beyond a reasonable doubt because the suggested conclusion and inferred facts of disposition that defendant likely and actually committed the charged offenses were not justified in light of the uncharged offenses' facts proven before the jury."[2] ECF No. 1 at 32. We find this argument unpersuasive because the trial court's jury instructions and the Court of Appeal's affirmation thereof were neither contrary to clearly established federal law nor a result of an unreasonable application of such law.

### i. Procedural Background

At the close of the evidence, the court provided the following instructions based on CALCRIM No. 852A to the jury:

> The People presented evidence that the defendant committed domestic violence that was not charged in this case; specifically, evidence of Laura Hoffman and Gloria Sonders Robinson. . . . Domestic violence means abuse committed against an adult who is a former cohabitant.

2 Reporter's Transcript ("RT") 394. The trial court instructed the jury that it could consider the evidence of petitioner's prior acts of domestic abuse "only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence." *Id.* at 395. If the jury found that petitioner had committed the prior acts of domestic violence, they were directed that they could—but were not required to—infer that petitioner had a predisposition to commit domestic violence offenses. *Id.* Finally, the trial court instructed that

---

[2] To the extent petitioner argues that the jury had insufficient evidence to find him guilty under the trial court's jury instruction, we see no error. A habeas petitioner challenging the sufficiency of evidence must show that "*no* fairminded jurist could conclude that *any* rational trier of fact could have found sufficient evidence to support the conviction." *Maquiz v. Hedgpeth*, 907 F.3d 1212, 1225 (9th Cir. 2018) (quoting *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)). Here, a fairminded jurist could conclude that a rational jury could have found evidence sufficient to support petitioner's conviction.

the jury should not consider petitioner's prior conduct, or evidence thereof, as proof that petitioner committed the crimes charged in the Information. *Id.*

CALCRIM 852 outlines categories of victims of domestic violence: a spouse, former spouse, cohabitant, person with whom the defendant has had a child, person who dated or is dating the defendant, and person who was or is engaged to the defendant. CALCRIM No. 852A. The trial judge failed to set forth these additional categories of victims in his jury instruction, and, on appeal, "[b]oth parties agree[d] this was error because no evidence was adduced at trial that Robinson was a former cohabitant of defendant." ECF No. 17-10 at 16. The Court of Appeal concluded that any error was harmless beyond a reasonable doubt:

> The court's instructions made clear that if the jury concluded defendant had not committed the uncharged act of domestic violence, it was to "disregard" that evidence "entirely." At most, the court's erroneously restrictive definition of domestic violence would have led the jury to wrongly conclude that defendant's abuse of Robinson was not domestic violence. But such a conclusion would have merely triggered the court's instruction to disregard the evidence entirely—an outcome that benefits defendant. Consequently, we find no prejudice.

ECF No. 17-10 at 16-17. The Court of Appeal also rejected petitioner's corollary arguments that the jury instructions were deficient, concluding that: (1) "there was sufficient evidence Hoffman had cohabitated with defendant to support the CALCRIM No. 852A Instruction as to her" and (2) "the court's instructions did not improperly remove an issue from the jury." ECF No. 17-10 at 17-18 (capitalization altered).

### ii. Legal Standard

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). A federal habeas court "must determine whether there was a

reasonable likelihood that the jury understood the instruction to allow a conviction predicated on proof that was insufficient to meet the requirements of due process." *Lisenbee v. Henry*, 166 F.3d 997, 999 (9th Cir. 1999) (*citing Ramirez v. Hatcher*, 136 F.3d 1209, 1213 (9th Cir. 1998)). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This court must assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

### iii. Analysis

The Court of Appeal's rejection of petitioner's instructional error claim was not objectively unreasonable. It is well-settled that a criminal jury may be instructed to apply a preponderance-of-the-evidence standard to a preliminary fact, such as a prior bad act, without lowering the prosecutor's ultimate burden of proof. *Cf. Estelle*, 502 U.S. at 73-74 ("To the extent that the jury may have believed [the defendant] committed the prior acts and used that as a factor in its deliberation, we observe that there was sufficient evidence to sustain such a jury finding by a preponderance of the evidence.") (*citing Huddleston v. United States*, 485 U.S. 681, 690 (1988)). Moreover, it cannot be said that the jury instructions regarding how the jury is to consider evidence of prior domestic violence "so infected the entire trial that the resulting conviction violates due process." *Id.* at 72. The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith." *Alberni*, 458 F.3d at 863 (citation omitted). Rather, the Supreme Court explained, "[b]ecause we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.'" *Estelle*, 502 U.S. at 75 n.5.

Finally, even if erroneous, the challenged instruction was harmless because it did not have "a substantial and injurious effect on the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623

(1993).  At the close of the evidence, the trial court instructed the jury that if it found that petitioner had committed the prior acts of domestic violence, they could—but were not required to—infer that petitioner had a disposition to commit domestic violence offenses.  These instructions did not compel the jury to draw an inference of propensity; they simply allowed it to do so.  The jury instructions given at petitioner's trial, viewed in their entirety, correctly informed the jury that the prosecution had the burden of proving all elements of each charge against petitioner beyond a reasonable doubt and that the instructions should be considered as a whole.  *See* RT 2:394-95.  The jury is presumed to have followed all these instructions.  *Weeks*, 528 U.S. at 234.

In sum, the trial court's jury instructions and the Court of Appeal's affirmation thereof were neither contrary to clearly established federal law nor a result of an unreasonable application of such law.

### D.  Denial of Motion for a New Trial

Petitioner argues that the trial court's denial of his attorney's motion for a new trial and the Court of Appeal's affirmation of this denial violated his Fourteenth Amendment right to due process.  ECF No. 1 at 35.  Petitioner's argument, however, is procedurally barred because the state court's dismissal of this claim rested upon an adequate and independent state-law ground, and petitioner has not shown that his procedural default should be excused.

#### i.  Procedural Background

The Court of Appeal summarized the context of petitioner's conflict-of-interest argument:

> Defendant initiated a civil action seeking punitive damages against the District Attorney Birgit Fladager and Deputy District Attorney Elizabeth Owen (De Jong) for malicious prosecution.  Both parties acknowledge that defendant's malicious prosecution claim was based on the charges brought in connection with the 2012 assault on Hoffman, for which defendant was acquitted.
> Owen (De Jong) was the prosecutor in both the 2012 case and the present case.  Defendant "believe[s] [Owen] threatened and intimidated the complaining witness which led to my false imprisonment in 2012."  The district attorney's opposition to the new trial motion stated:
> > "Based on a discussion with jury members following the [2012 Hoffman assault] trial, jury

members stated the acquittal was based on a lack of
corroborating evidence at the location where victim
was beaten by Defendant. Law enforcement
investigators did not go to the location of the
victim's beating, but only met with her at the
hospital where she was being treated for multiple
injuries."

Fladager and Owen filed a demurrer to defendant's
complaint, which the civil court sustained with leave to amend.
Defendant did not file an amended pleading within the allotted
time. As a result, on April 1, 2014, the court dismissed the lawsuit
and entered judgment in favor of Fladager and Owen.

In his motion for a new trial in the present case, defendant
claimed he was unable to continue handling the malicious
prosecution because he was arrested in April 2014. Defendant
claimed he never intentionally abandoned the civil lawsuit, and
attended at least 3 court dates in early 2014. Defendant claimed a
mediation date had been set but was withdrawn for unknown
reasons. He also said he was still seeking legal assistance to
continue his civil case against Fladager and Owen.

ECF No. 17-10 at 19-20 (footnotes omitted).

After his guilty verdict, petitioner moved for a new trial and the trial judge denied this

motion on the merits. *See* ECF No. 17-10 at 18. On appeal, petitioner argued that this decision

was error, and the Court of Appeal held that petitioner had forfeited this conflict-of-interest claim

by failing to raise it before or during trial:

"The forfeiture rule generally applies in all civil and
criminal proceedings. [Citations.] The rule is designed to advance
efficiency and deter gamesmanship . . . . ' " ' "The purpose of the
general doctrine of waiver [or forfeiture] is to encourage a
defendant to bring errors to the attention of the trial court, so that
they may be corrected or avoided and a fair trial had .... " '
[Citation.] ' "No procedural principle is more familiar to this Court
than that a *constitutional* right," or a right of any other sort, "may
be forfeited in criminal as well as civil cases by the failure to make
timely assertion of the right before a tribunal having jurisdiction to
determine it." ... ' [Citation.]" (*Keener v. Jeld-Wen, Inc.* (2009) 46
Cal.4th 247, 264, original italics.) Indeed, "[c]ritical defenses may
be forfeited even before trial begins ...." (*People v. Smith* (1993) 6
Cal.4th 684, 694.)

" ' " ' The law casts upon the party the duty of looking after
his legal rights and of calling the judge's attention to any
infringement of [his or her rights]. If any other rule were to obtain,

the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " ' [Citation.]" (Fn. omitted; [citations].)' [Citation.]" (*Keener v. Jeld-Wen, Inc., supra,* 46 Cal.4th at pp. 264-265, fn. omitted.)

        Applying the forfeiture rule to the present context, we hold that a defendant must raise any known claim that the prosecutor has a disabling conflict of interest before trial. The primary purpose of requiring timely objections is to give the trial court an opportunity to correct the error or mitigate prejudice. (*People v. Williams* (1997) 16 Cal.4th 153, 254.) That purpose cannot be realized if a defendant is permitted to wait to raise a known disqualification claim until after trial.

        Here, defendant knew of the grounds for seeking disqualification of the district attorney (i.e., the civil malicious prosecution lawsuit) from the outset. Yet, defendant first raised the issue after he had lost at trial. Such gamesmanship is not permitted under the rule of forfeiture.

        Because defendant failed to raise the issue of prosecutorial disqualification before trial, he cannot do so after.

ECF No. 17-10 at 20-22 (footnotes omitted).

### ii. Legal Standard

The Supreme Court has long held that federal courts may not review a question of federal law decided by a state court if the state court's decision rests on a state-law ground that is independent of the federal question and adequate to support the judgment. *Lee v. Kemna*, 534 U.S. 362, 375 (2002); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "[T]he procedural default doctrine is a specific application of the general adequate and independent state grounds doctrine." *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994); *Fields v. Calderon*, 125 F.3d 757, 761-62 (9th Cir. 1997). The procedural default doctrine "bar[s] federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30. A state procedural rule is considered an independent bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). A state procedural rule constitutes an adequate bar to federal court review if it was "firmly established and regularly followed" at the time the state court applied it. *Johnson*, 136 S. Ct. at 1804. Procedural default is an affirmative defense, *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996); *Insyxiengmay v.*

19

*Morgan*, 403 F.3d 657, 665 (9th Cir. 2005), "and the state has the burden of showing that the default constitutes an adequate and independent ground," *Insyxiengmay*, 403 F.3d at 665-66; *accord Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).

### iii. Analysis

Respondent raises the affirmative defense that petitioner's conflict-of-interest claim is procedurally barred because petitioner failed to raise it until after trial, thereby forfeiting the claim. ECF No. 16 at 35-39; *see* Cal. Evid. Code § 353; *Keener v. Jeld-Wen, Inc*., 46 Cal. 4th 247, 264 (2009) ("No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (internal quotation marks and citation omitted)). Respondent has met his burden of showing that petitioner's procedural default constitutes an adequate and independent ground by pleading that this claim is procedurally defaulted in accordance with state forfeiture rules. *See Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (holding that California's rule requiring that a party make a contemporaneous objection to preserve an issue for appeal is an adequate and independent state rule); *Rich v. Calderon*, 187 F.3d 1064, 1069-70 (9th Cir. 1999) (same).

Since respondent has met his initial burden, the burden shifts to petitioner to challenge the independence or adequacy of the procedural bar. *Bennett*, 322 F.3d at 586. Petitioner has not addressed this issue and has therefore failed to meet his burden under *Bennett*.

If there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner demonstrates: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Cook v. Schriro*, 538 F.3d 1000, 1025-26 (9th Cir. 2008) (holding that absent a showing of cause and prejudice, petitioner is barred from raising a claim on federal habeas review where he failed to meet state's contemporaneous objection rule). In order to demonstrate "cause" for a procedural default, petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

1     Rather than argue that an external factor prevented his compliance with the procedural bar,

2     petitioner argues that the procedural bar was misapplied. *See* ECF No. 1 at 38-39 (arguing that

3     Court of Appeal's opinion "misstated material facts that defendant first raised the district

4     attorney's disqualification after he lost at trial and failed to raise the issue before trial").

5     However, habeas review will not lie for errors of state law. *See Estelle*, 502 U.S. at 67 (quoting

6     *Lewis v. Jeffers*, 497 U. S. 764, 780 (1990)). Moreover, petitioner has failed to show that a

7     fundamental miscarriage of justice would result from the court not reaching the merits of his

8     defaulted claims. *See Schlup v. Delo,* 513 U.S. 298, 327 (1995) (concluding that

9     fundamental miscarriage of justice exception to a procedural default is intended to apply only in

10    extraordinary cases when a constitutional violation results in the conviction of an innocent

11    person).

12        In sum, petitioner has not shown (1) cause for the default and prejudice to excuse it or (2)

13    that a fundamental miscarriage of justice would result from the court not reaching the merits of

14    his defaulted claims. Accordingly, his conflict-of-interests claim is procedurally defaulted.

15    **III.**      **Certificate of Appealability**

16        A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district

17    court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253;

18    *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing Section 2254 Cases

19    requires a district court to issue or deny a certificate of appealability when entering a final order

20    adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d

21    1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes

22    "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This

23    standard requires the petitioner to show that "jurists of reason could disagree with the district

24    court's resolution of his constitutional claims or that jurists could conclude the issues presented

25    are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord*

26    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

27        Here, petitioner has not made a substantial showing of the denial of a constitutional right.

28    Thus, we decline to issue a certificate of appealability.

**IV.    Order**

      1.   The petition for a writ of habeas corpus, ECF No. 1, is denied.

      2.   The court declines to issue a certificate of appealability.

      3.   The clerk of court is directed to enter judgment in favor of respondent and close the case.

IT IS SO ORDERED.

Dated:    June 5, 2019    

                               UNITED STATES MAGISTRATE JUDGE

No. 203